Please call the desk, please. 14-1251, People v. Romero, Taylor. Counsel, please approach, state your names, and reflect on how much time you need. Good morning, Your Honor. I'm Mike Gentithis, on behalf of the appellant Romero-Taylor. Good morning, Your Honor. It's Mary Needham, Assistant State's Attorney, on behalf of the people of the state of Illinois. How much time do you have? I'll reserve three minutes in rebuttal. Good morning, Your Honors. My name is Mike Gentithis, on behalf of the appellant Romero-Taylor. If Your Honors are particularly interested in any of the three primary issues raised in the brief, I'm happy to address that at the outset. Otherwise, I'll proceed through those three issues in the sequence they're presented in the briefs. The evidence here is clear. Romero-Taylor reasonably believed that LeShay DiPrato presented an imminent threat to his young family. He watched DiPrato plow her Chevy Lumina with her own two children in the backseat into a car containing his ex-girlfriend Erica Braxton, their seven-year-old daughter, Amira, and his nine-year-old niece, Priya. He then watched as DiPrato manipulated the gearshift in an apparent attempt to continue an attack on his loved ones. Well, now, you say that a couple of times in your brief about what Taylor saw. We know that DiPrato testified that she was trying to do something with the gearshift, and maybe a trier of fact could infer that Taylor saw that from 10 feet away. I don't know, but we don't have any direct evidence of what he saw, right? There's no testimony from Taylor. That's correct, Your Honor. We do have the circumstantial evidence that as Taylor approached from the driver's side and DiPrato, admittedly triggered after certain comments that Braxton had made on Facebook, had slammed her car into the side of Taylor's loved ones, she was attempting to- What are the comments on Facebook? I thought this was all triggered because DiPrato saw her then-boyfriend leaning in the window of his ex-girlfriend's car, and she got that irritated her. That's true as well, Your Honor. There were also certain comments that Braxton had made about Taylor, or rather about DiPrato on Facebook a few days before this incident in early December 2010, which also admittedly triggered DiPrato prior to this occurrence. And it's what- How do we know that- From DiPrato's testimony. How do we know that it triggered the defendant? It triggered DiPrato based upon her own testimony. That was her words. Yeah, but we're more concerned about what the defendant did, right? We are concerned with Taylor's actual and reasonable belief, and here it's clear. His reaction after watching this incident, shouting, Okay, now that's an important statement. Shooting to stop her. Stop her from doing what? After she slammed a one-and-a-half-ton automobile into the side of his loved ones, then is about two house lengths down the street, apparently attempting to put her car in reverse and continue an attack on his family. To whom? To Taylor, from his perspective. How do we know that? Based upon the circumstantial evidence introduced at trial. Now, Taylor himself- Which was what? That Taylor approached from his family's house- Toward the passenger- Towards the- To the driver's side. To the driver's side, yes. After the car was disabled and stopped. Now, from Taylor's perspective, he's unable to see the damage. Well, he can see the damage, but could he see, what, the car moving or not moving? The car is not moving at that point, Your Honor. You're right. However- And did you see the airbags went off? There is evidence in the record that the airbags went off. The airbags went off. You mentioned that several times in your briefs. Yes. With an S, airbags. So the airbags are- And he's coming up right to the driver's side window. Right there. The car's not going anywhere. He's right there at the window. As he's approaching, Taylor is continuing to- He's not moving, right? And he's right at- She said he was within a couple feet, right? When he shot through the window. About five feet, Your Honor. That's not very far. And he can see very clearly. The car's not- He's right there. And the car is not even near- You said there's two house links in front of where his daughter is. So if he didn't do anything, he wouldn't be here. What was necessitated? What was the- How was he protecting anyone? What Taylor could see as he approached, despite the airbags, is DiPrado attempting to put the car in gear from two house links away. Now that's enough distance to generate speed to essentially re-engage and attack. But there wasn't. They didn't move. And he's within- He's right there at the car. There's other things you can do when you're right there at the car and shoot somebody and try to kill them. Is there any testimony that he saw her trying to engage the car and move it? No, Your Honor. Okay. But Taylor was not- So if there's no testimony about that, how can anybody say that he reasonably believed or unreasonably believed that that was happening? Because the standard for jury instruction on the defense of others is only slight evidence. The circumstantial evidence here more than demonstrated that Taylor had a reasonable and actual belief, based upon his approach, after DiPrado has slammed her car into the side of his loved ones and has seen- attempting to re-engage with a deadly weapon and continue this attack. But that's my question, counsel, really. Just what is it in the testimony, in the evidence, that would lead a reasonable person to conclude that the defendant saw that and reasonably believed he had to act in the way he acted? What evidence is there that he saw it or that he would have seen? Two things. First, his approach, which DiPrado herself testified to. The angle he's approaching from, across the street and towards the driver's side, would allow him to see DiPrado manipulating that gearship. But when she testified that she was manipulating the gearship, right? She admitted that she was manipulating the gearship, Your Honor. She also admitted that she was- But she wouldn't know what he saw. We know that he was approaching from the driver's side, a perspective from which he could see that manipulation. He could see- Where was the gearshift? The gearshift on a 99 Chevy Luminosa on the steering column, Your Honor. And it would be on the right side. Correct. And he's coming from the left side. Yes, he's coming from the driver's side. He is walking from his mother's house, which is across the street on the driver's side, slightly behind where the car careened after slamming into his loved ones hard enough to break the axle and tear off the front bumper of the Cadillac. And he's able to see from that perspective an admittedly unhinged, irrational DiPrado attempting to continue an attack on his 7-year-old daughter and 9-year-old niece with a deadly weapon. She's re-engaged in that. She also had her kids in the car too. So, you know, to me it's pure speculation, isn't it? That he saw this? That he saw what she might have been doing? No, Your Honor. Because of the testimony surrounding the events that describes where Taylor was standing. There is no speculation that- I'm sorry. No, no, go ahead. Finish your thought. There's no speculation that he was in a position to see this manipulation of the gear shift. Okay. Was he in a position to see that the car was not moving? No, Your Honor. The damage sustained- He could see her trying to get it moving, but he couldn't see it not moving? He was able to see that the car was not moving. He wasn't able to see that the car was inoperable. I'm sorry, I misunderstood your question. So there is evidence that the car never moved after she struck the other car. That's correct. The car did not move after she struck the other car. So if the car never moved and we don't know what he saw in the car, why was the trial court wrong in refusing the self-defense or defense of other obstruction? Because there was enough circumstantial evidence to support each element of that defense of other's defense beyond the mere slight evidence standard here. Some of the issues that the State raises in its brief really pertain to reasonable doubts of that defense. It's not addressing the slight evidence standard. Those reasonable doubts need to be assessed by a jury that's properly been instructed on the defense of others. There was enough proof, given the speed at which DiPrallo was driving, her willingness to risk the children both in her own car and the children in Braxton's car, that she presented a real imminent threat to young children in Taylor's family. Now, let me ask you one thing. Is there any evidence in the record that the defendant even saw the accident or the collision itself? In other words, my question is geared towards perhaps he didn't even see what happened unless there was evidence of that. He may have just heard it and then came out. There is evidence of that in Taylor's own statements via DiPrallo's testimony. He screams, bitch, you're trying to kill my kids. The tense of that statement doesn't necessarily change the actual reasonable belief that he held. First, that would be an evidentiary issue that a jury should resolve after being properly instructed. Second, the evidence was unclear on the tense. DiPrallo testified twice that it was present tense and other times that it was past. And in any event, even if the past tense was used, the unspoken portion of that statement is, you tried to kill my kids and they're continuing your attack. From his perspective, the car appears operable and there is an unhinged DiPrallo at the wheel, trying to re-engage, essentially trying to reload a deadly weapon against his family. You used the term unhinged. What evidence in the record was there that she was unhinged from the defendant's perspective? From Taylor's perspective, he has just watched. Is there evidence that he watched? Based upon his statements, yes. But the statement you just said was inconclusive as to whether he said, you tried to kill them or you're trying to kill them. Well, under either construction, his perspective from the front lawn doesn't change. The actions that DiPrallo has taken after arguing throughout the morning, after allegedly leaving the scene, then circling the block again, seeing Taylor lean in to have a conversation with Braxton, and then reversing course so that she can drive at speeds fast enough to break her own front axle, to tear the bumper off of the Cadillac with these young children inside, and to careen down the street, two house lights, provided more than the slight evidence necessary to support a reasonable and actual belief in the need to defend others. What's the evidence that the defendant saw all that? Both his own statement that DiPrallo was trying to kill his children, and DiPrallo's testimony as to Taylor's perspective. He's standing in the front yard of his mother's house. He can easily observe a car careening down the road at excessive speed into a car filled with his loved ones. Well, it's possible that he could have seen it, but there's no evidence that he did, correct? I think there is slight evidence to justify the insertion here. No, no, my point is, I'm just asking, I'm not trying to beat you to death, but, I mean, the driver of the other car, his other former girlfriend, she didn't say he saw it. She doesn't testify in charge of all this. The neighbor didn't say he saw it. I mean, there's really no evidence in the record of what the defendant saw, correct? There is no direct evidence of that, Your Honor. Okay. Circumstantial evidence wouldn't be sufficient to justify a defense of others' instruction, however. Taylor himself need not testify. I accept that completely, but I also would you accept that there has to be evidence, some evidence, from his perspective, what he saw in order to form or to have this unreasonable belief? Yes, and that evidence was present here. Could a reasonable, oh, I'm sorry, go ahead. Could a reasonable trier of fact draw the inference that he did see it? Absolutely. Based upon both the testimony as to his statements, the testimony as to his location during this incident, there was far more than the slight evidence necessary to entitle him to a defense of others' instruction. Remember, this is only an instructional issue. Reasonable doubt ought to be resolved by the jury after it's been properly instructed on the defense of others. Clearly, there was a reasonable and actual belief in the imminent threat that the product presented. So the imminent threat was not the original sly swipe. The imminent threat, am I correct, is that he could have seen her moving the gear shift. Is that right? Yes. Let's say, this is a hypothetical. If he could not see, if there was no seeing of the gear shift, then there wasn't any imminent threat, is there? Where's the imminent threat if she's just sitting there in a car? The car is not moving. We know that. It never moves. But if he can't see her shifting, where's your case? Where's that slight evidence? The evidence is in the product's own behavior. No. But if he doesn't see, no. My hypothetical is he does not see her do the, she testified that he, we don't know what he saw. She testified she was trying to do the, my hypothetical is he could not see. Without that, there was no imminent threat. There would still be an imminent threat given the product's willingness to risk her own children's lives, the lives of two other children. But then you're saying every time somebody side-swipes one, there's an imminent threat, and then you just go up and shoot somebody? No, Your Honor. The car's not moving. It's two houses away. It's not moving. If she's just sitting there, where's the imminent threat? The distance she was away from the car is part of the evidence because that gives her enough opportunity to generate speed and control for a potential attack. There's an imminent threat no matter what happens, right? No, Your Honor. Okay, so there has to be something that she's doing that causes this imminent threat. And I thought your argument was it was that she testified that she was trying to get it in gear. Isn't that right? That's accurate, but in addition, the product herself demonstrating this kind of irrational, extremely dangerous behavior is an imminent threat to Taylor's family. He doesn't know that. He doesn't. She just drove up. She stopped. She already did it. It's over. Unless she's doing something, it's over. There's no threat. I mean, if there's an accident and somebody brings their car to a stop a few houses away, does that mean that somebody can go and say, oh, we're going to back up and they're going to hit him again? No. There has to be some basis. You've got to see something. I agree that that simple accident scenario would not provide the set evidence necessary. There's more in the circumstances here than simply an accident. The testimony demonstrates that DiPrato is enraged. She's willing to possibly sacrifice her own children to get that. He doesn't know that, does he? Well, certainly from the testimony earlier in the day, he knows that DiPrato is extremely upset that he's exchanging clothes with his ex-girlfriend and their daughter together. He also knows that DiPrato is willing to return to the scene after claiming she was going home. I know. She did this accident, and now she's stopped. So the next question is, the airbags went off. Yes, John. I don't know how anyone could possibly see what somebody's doing on the right side when the airbags go off. I don't care how close you are to that window. There's an airbag between that wheel and DiPrato. How could anybody possibly see through an airbag? DiPrato was able to manipulate the gear shift. She can manipulate it, but she's behind it. There's an airbag between the steering wheel and DiPrato, right? And that airbag, it blows up, and she's trying to reach around. I don't see how, under the facts of the case, anybody could possibly see anything. Those are not the facts of the case. DiPrato, the airbags did deploy. DiPrato doesn't testify that the airbags remained in her face as she's attempting to manipulate the gear shift. There isn't even testimony that the driver's side airbag engaged as opposed to just the passenger's side. Well, we know. Your briefs are full of the words, airbags deployed. There's no testimony to that fact. You conceded that. Even if the airbags deployed, DiPrato is able to reach the gear shift. Presumably, the airbags have deflated to the point where she can move around the car and where Taylor can observe her manipulating things within the car. That's your assumption. There's enough circumstantial evidence from which the trial of fact should be able to determine whether or not the defense of others lies here. Taking it out of the jury's hands with that much evidence present was an error on the court's part. Let me ask you a question. Let's assume the defendant and the driver of the vehicle, his current girlfriend, had a brutal verbal argument in the morning about his former girlfriend. They argued all day about it. They argued all the way over to his mother's house. They argued after she left and got in the car, drove away, and assume, as she's driving back, she was texting on her phone, if this was the testimony, she was texting on her phone or dropped her cell phone or got distracted and crashed into the other car. That's not the testimony. But would that have justified him shooting her? No, Your Honor. Okay. Now, why not? Because of her testimony that she dropped her phone and was texting? Because we have no evidence in the record that would give the trier of fact any reason as to what was impressing him to pull out a gun and shoot her from five feet away. There is evidence that Taylor had reason to believe his family was imminently threatened. De Prado is running her car into a car of his loved ones. It's over. But it could have been an accident. That's my point. What is it that would cause him to think it was not an accident? Both the previous history that morning, the arguments that have been ongoing. But his argument was, his hypothetical was, it was a true accident. Through his hypothetical, it was my understanding that there would have been testimony, some proof that De Prado was simply distracted. Yeah. There was no suggestion that De Prado was distracted. But the defendant didn't know that. Did he? I mean, what evidence was there that he knew she was not distracted, that she was trying to kill his family? I mean, that's the point. What evidence is there to cause a reasonable judge to consider, you know what, there is slight evidence here that he was defending his family. What evidence was it about the accident that made him observe that objectively? Two things. First, De Prado's manipulation of the gear shift after the initial collision in an effort to continue the attack. Second, their conversations earlier that day, which demonstrated De Prado's irrational behavior, her willingness to put at risk the lives of her own children, simply to get back at someone that had triggered her with comments on Facebook. What did she say that she would get back and risk her own children? De Prado doesn't testify to that. Of course not. Her actions speak much louder than any testimony she could have given. She's running a 3,300-pound gear. Okay. Any other questions? Thank you. Thank you. Good morning, Your Honors. May it please the Court. The trial court was absolutely correct in denying the defense of others' instruction. There was not slight evidence. There was nothing but speculation on defendant's part to warrant this instruction. Well, when he says, as he's approaching the vehicle, you either tried or are trying to kill my kids. Why isn't that slight evidence? Well, for several reasons. There was a sequence of events that occurs here after the argument, and De Prado collides her car with Braxton's car. The car causes damage to Braxton's bumper and damages De Prado's car. The airbags deploy. The axle is broken and the right rear is damaged, and the car careens to a stop two car lengths away. The car is off. And I just want to correct this repeated notion that she's manipulating the gearshift. The only testimony about the gearshift was that when she came to a stop, the car was off and she tried to put the car in park, and then she was trying to start the car. That's where the manipulation stopped. Then she's sitting there trying to start her car. She hears a defendant from a distance away say, you're trying to kill my kid or you tried to kill my kid, and she hears a gun shot then. She looks over. The defendant is now walking toward her. So that statement, number one, could just as easily be construed as a complete expression of anger and as a thing that you're trying to kill my child, especially at this point that he's not five to six feet away. Her testimony was he came right up to the car, and he's five to six inches away. My point is the threshold for getting a defense of others instruction is pretty low. And a trier of fact might ultimately conclude that the car was stopped, it was immovable, he had no reason to believe that she was capable of continuing anything against his family. Defense of others rejected. But when he approaches the car from the side that's not damaged and says, you're trying to kill my kids and shoots, I have a problem with that's not slight evidence. Well, he says that before he starts moving toward the car. He's still in his mom's front lawn when he says that. And he fires a shot then. So, you know, it's then he goes right up to the car, and even though that's a short time. So in that period, he's to formulate the idea that the danger has stopped. I know she sights wiped the vehicle having my daughter in it. It stopped. No reason for me to do anything. Correct. In that period of time. Yes, because there's no testimony that he felt she could do anything. There's no reason to believe that she could do anything. He's speaking in a, he says, makes this comment that just as easily or perhaps more easily an expression of just complete anger at what just happened, then I'm going to now protect you, protect my daughter or other loved ones from you. So now let's talk about, this is two issues, but we have the sentencing issue where the trial judge said, you agree that he misconstrued the statute in the way that if he was seriously provoked, he would have been entitled to a lesser sentencing range, right? Well, I think that what the judge was referring to is that he looked at the second clause of that and said, I don't think this applies, but he still engaged in let defense counsel argue and then he considered whether it would apply. So if we posit that someone who is just seeing his girlfriend sideswipe a car containing his family members could be seriously provoked, entitling him to a lesser category of sentence, how can you then not say that there was slight evidence of the defense of others? It seems, I'm having a hard time reconciling those. Well, with regard to the sentencing issue, the serious provocation, there's four categories, and the category the defendant is arguing is that DePredo caused substantial physical injury or assault to Amira, and there was no evidence at all of that. And that's one reason why the trial court denied the request to sentence him as a class X. If somebody intentionally rams a car into another occupied vehicle, that's not assault? Well, we don't, I mean, it could be inferred, but there's no evidence that the child or children even knew what was going to happen or that they were apprehended or had apprehension that something would happen to them. And in any event, it was over at the time the defendant walked up and stood five inches from DePredo's window and fired into her car. There was no substantial, there was no assault at that point. They couldn't fear that she would do anything to them at that point. She's in a car that's off, can't be turned on, can't be moved. If there are no further questions, we ask that you reject defendant's arguments and affirm his conviction and sentence. Thank you. Thank you. I'll just briefly address the sentencing issue, Your Honors. Again, the parties do agree that the subsection of the intent statute, which would entitle Taylor to a sentence reduction, applies here. So, Taylor, we've only shown by a preponderance of the evidence that he was seriously provoked and acting under a sudden and intense passion. It's clear there was a serious provocation here. DePredo rams her car into a car containing his seven-year-old daughter and nine-year-old niece at speeds so fast that she snapped the axle of her car. That constitutes a substantial physical injury or assault. A seven- and nine-year-old girl just being hit by a 3,300-pound car are certainly going to be in reasonable apprehension of a further battery. Furthermore, there's no doubt that Taylor was acting under a sudden and intense passion. He screams it out loud for everyone to hear after watching Taylor slam a car into his loved ones and manipulate the gearshift. Any evidentiary issue as to that serious provocation or that sudden and intense passion ought to be resolved on remand. The circuit court didn't even apply this subsection, despite the parties' agreement that it ought to have been applied below. Are there no further questions? Thank you very much. Thank you. I want to thank Osife. Obviously, you've given us a lot to think about, as you can tell from the questions. And both of you did excellent presentations, so thank you very much. And we will take the case under advisement. We are dismissed. Thank you.